**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**HEATHER M. DAVIS,**

      **Plaintiff,**

**-vs-**　　　　　　　　　　　　　　　　　　　　　　　　　　**Case No. 6:15-cv-1120-Orl-DAB**

**COMMISSIONER OF SOCIAL SECURITY,**

      **Defendant.**

_____

## MEMORANDUM OPINION AND ORDER

This cause came on for consideration without oral argument on review of the Commissioner's administrative decision finding Plaintiff was no longer disabled as of June 30, 2012. For the reasons set forth herein, the decision of the Commissioner is **REVERSED** and the matter is **REMANDED** for additional proceedings**.**

## Procedural History

Plaintiff protectively filed an application for a period of disability, disability insurance benefits (Title II) on October 4, 2005, and was found disabled beginning August 1, 2004 (R. 66, 143-47). Pursuant to a statutorily required continuing disability review, the Commissioner determined that Plaintiff's disability had ceased as of April 6, 2012, and her period of disability terminated June 30, 2012 (R. 67). On November 15, 2012, the Commissioner's disability hearing officer affirmed the cessation of Plaintiff's disability benefits (R. 68, 77-81, 87-99). Plaintiff requested and received a hearing before an administrative law judge ("the ALJ"). On February 21, 2014, the ALJ issued an unfavorable decision, finding Plaintiff to be no longer disabled as of June 30, 2012 (R. 20-34). The Appeals Council declined to grant review (R. 1-3), making the ALJ's decision the final decision of the Commissioner. Plaintiff timely filed her Complaint (Doc. 1), the parties consented to the

jurisdiction of the undersigned magistrate judge, and the matter is fully briefed and ripe for review pursuant to 42 U.S.C. §405(g).

## Nature of Claimed Disability

On December 6, 2005, the date of the original decision finding Plaintiff disabled, Plaintiff had the medically determinable impairments of ulcerative colitis and aplastic anemia; and these impairments were found to meet the requirements of Section 5.06 of the Listings (20 CFR Part 404, Subpart P, Appendix 1) (R. 22). Plaintiff claims to be continuously disabled due to ulcerative colitis, hypothyroidism, and anxiety (R. 163).

*Summary of Evidence Before the ALJ*

Plaintiff was thirty seven years old on the date of the ALJ's decision (R. 34, 143), with two years of college (R. 45) and past relevant work as a fast food lead worker, dietary assistant, file room clerk, certified nursing assistant, and day care worker (R. 62, 197).

In the interest of privacy and brevity, the medical evidence relating to the pertinent time period is summarized here only to the extent necessary to address Plaintiff's objections.  In addition to the medical records and opinions of her healthcare providers, the record includes the testimony of Plaintiff and a Vocational Expert; written forms and reports completed by Plaintiff and her sister; and opinions from non-examining state agency consultants.

As explained by the ALJ, to determine if a claimant continues to be disabled, the ALJ follows an eight step sequential assessment (R. 20-21):

> At step one, the [ALJ] must determine if the claimant is engaging in substantial gainful activity. If the claimant is performing substantial gainful activity and any applicable trial work period has been completed, the claimant is no longer disabled (20 CFR 404. l 594(f)(l )).
>
> At step two, the [ALJ] must determine whether the claimant has an impairment or combination of impairments which meets or medically equals the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d),

> 404.1525 and 404.1526). If the claimant does, her disability continues (20 CFR 404.1594(f)(2)).
>
> At step three, the [ALJ] must determine whether medical improvement has occurred (20 CFR 404.1594(f)(3)). Medical improvement is any decrease in medical severity of the impairment(s) as established by improvement in symptoms, signs and/ or laboratory findings (20 CFR 404.1594(b)(l)). If medical improvement has occurred, the analysis proceeds to the fourth step. If not, the analysis proceeds to the fifth step.
>
> At step four, the [ALJ] must determine whether medical improvement is related to the ability to work (20 CFR 404. 1594(f)(4)). Medical improvement is related to the ability to work if it results in an increase in the claimant's capacity to perform basic work activities (20 CFR 404.1594(b)(3)). If it does, the analysis proceeds to the sixth step.
>
> At step five, the [ALJ] must determine if an exception to medical improvement applies (20 CFR 404.1594(f)(5)). There are two groups of exceptions (20 CFR 404.1594(d) and (e)). If one of the first group exceptions applies, the analysis proceeds to the next step. If one of the second group exceptions applies, the claimant's disability ends. If none apply, the claimant's disability continues.
>
> At step six, the [ALJ] must determine whether all the claimant's current impairments in combination are severe (20 CFR 404.1594(f)(6)). If all current impairments in combination do not significantly limit the claimant's ability to do basic work activities, the claimant is no longer disabled. If they do, the analysis proceeds to the next step.
>
> At step seven, the [ALJ] must assess the claimant's residual functional capacity based on the current impairments and determine if she can perform past relevant work (20 CFR 404.1594(f)(7)). If the claimant has the capacity to perform past relevant work, her disability has ended. If not, the analysis proceeds to the last step.
>
> At the last step, the [ALJ] must determine whether other work exists that the claimant can perform, given her residual functional capacity and considering her age, education, and past work experience (20 CFR 404. 1594(f)(8)). If the claimant can perform other work, she is no longer disabled. If the claimant cannot perform other work, her disability continues.

(R. 20-21).

Here, the ALJ determined that, through June 30, 2012, the claimant did not engage in substantial gainful activity (R. 22). Next, the ALJ found that the medical evidence established that "as of June 30, 2012, the claimant continued to have the severe medically determinable impairment of ulcerative colitis/pancolitis. However, the condition reportedly now is under control." *Id.* The ALJ found that since June 30, 2012, the claimant has not had an impairment or combination of

-3-

impairments which met or medically equaled the severity of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (R. 24). The ALJ determined that "medical improvement occurred as of June 30, 2012," and that medical improvement is related to the ability to work "because as of June 30, 2012, the claimant's CPD [comparison point decision] impairments no longer met or medically equaled the same listings that were met at the time of the CPD." (R. 24).

The ALJ determined that Plaintiff continued to have a severe impairment or combination of impairments (R. 24) and, as of June 30, 2012, had the following residual functional capacity ("RFC"):

> to perform sedentary work as defined in 20 CFR 404.1567(a), with the following limitations. The claimant can lift/carry ten pounds occasionally, and less than ten pounds frequently. She can stand/walk for a total of four hours during an eight-hour workday, with a sit/stand option allowing for no more than thirty minutes of uninterrupted standing/walking. She can sit for a total of six hours during an eight-hour workday. The claimant should engage in no more than frequent climbing of ramps and stairs. She never should climb ladders, ropes or scaffolds. She should engage in no more than frequent stooping, kneeling, crouching or crawling. She should avoid extreme cold or heat, wetness, humidity, vibration, fumes, odors, dust, gases, and all industrial hazards such as unprotected heights or dangerous moving machinery.

(R. 25). Although the ALJ found Plaintiff to be unable to perform her past relevant work (R. 32), she was deemed to be able to perform a significant number of jobs in the national economy, and was therefore no longer disabled as of June 30, 2012 (R. 33-34).

## Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – *i.e.,* the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable

person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

## Issues and Analysis

Plaintiff argues that the ALJ erred by failing to include in the RFC the limitations found by Plaintiff's treating physicians (Nasir Hasan, M.D., Stephen Fitzgerald, M.D., and Scott Seminer, M.D.), and by discounting their opinions and giving greater weight to the opinions of non-examining state agency physicians and psychologists. Upon close review, the Court agrees that remand for further consideration is warranted.

*Evaluating Medical Evidence*

The Eleventh Circuit has held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor. *Winschel v. Comm'r, Soc. Sec. Admin.*, 631 F.3d 1176, 1178–79 (11th Cir. 2011) (citing 20 CRF §§ 404.1527(a)(2), 416.927(a)(2); *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987).) When evaluating a physician's opinion, an ALJ

considers numerous factors, including whether the physician examined the claimant, whether the physician treated the claimant, the evidence the physician presents to support his or her opinion, whether the physician's opinion is consistent with the record as a whole, and the physician's specialty. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c).

Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. *See Lewis v. Callahan*, 125 F.3d 1436 (11th Cir. 1997)*; Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991); 20 C.F.R. § 404.1527(d). Good cause for disregarding an opinion can exist when: (1) the opinion is not bolstered by the evidence; (2) the evidence supports a contrary finding; or (3) the opinion is conclusory or is inconsistent with the source's own treatment notes. *Lewis,* 125 F.3d at 1440. By contrast, a consultative examiner's opinion is not entitled to the deference normally given a treating source. *See* 20 C.F.R. § 404.1527(c)(2); *Crawford v. Comm'r, Soc. Sec. Admin.*, 363 F.3d 1155, 1161 (11th Cir. 2004) (noting a one-time examiner's opinion is not entitled to great weight). Nonetheless, all opinions, including those of non-treating state agency or other program examiners or consultants, are to be considered and evaluated by the ALJ. *See* 20 C.F.R. §§ 404.1527, 416.927, and *Winschel*.

Applied here, Plaintiff's long time internist and her two gastroenterologists all provided opinions as to her limitations, and all concluded that Plaintiff was disabled. The ALJ did not credit any of these opinions.

The ALJ reviewed and summarized pertinent treatment notes of Dr. Hasan, Plaintiff's internist (R. 29-30). On February 12, 2012, Dr. Hasan opined Plaintiff was not capable of full-time sustained work activity in that she "has easy fatigability due to a combination of physical (ulcerative colitis, anemia) and mental (depression/anxiety) factors" (R. 298). The ALJ acknowledged this opinion, but gave it "limited weight," focusing solely on the assessment of Plaintiff's mental status:

> Although [Dr. Hasan] indicated [Plaintiff's] treatment for chronic depression/anxiety significantly interfered with her daily functioning, he had made no referral for

> specialized treatment. Moreover, he described the claimant as being alert and oriented (albeit with somewhat diminished concentration), and as being able to manage finances and other day-to-day affairs. (Exhibit Nos. 3F, 4F.) Additionally, the treatment records as a whole do not support the claimant's allegation that she was unable to work. The claimant was a single parent who took care of her four young children, cooked, performed household chores, drove, and shopped. She indicated medications prescribed by her primary care provider reduced her symptoms of depression and anxiety, she received no specialized mental health treatment, and the medical evidence as a whole showed the claimant's impairments primarily were physical.

(R. 31).

Stephen Fitzgerald, M.D., was one of Plaintiff's gastroenterologists. The ALJ summarized Plaintiff's treatment with Dr. Fitzgerald, noting, among other things:

> A September 2011 colonoscopy showed severe pancolitis with polyploid masses in the sigmoid and rectum. Dr. Fitzgerald suggested that if the claimant was reluctant to consider surgery, she should take mercaptopurine and a biologic drug. (Exhibit No. 2F at 3.) In October 2011, Dr. Fitzgerald doubled the claimant's Asacol dose and advised her to restart Remicade infusions as soon as possible. If she did not experience complete improvement, colon resection surgery should be discussed further. (Exhibit No. 11F at 50.) December 2011 treatment notes showed the claimant had improved with the increased Asacol dose, but Remicade had been denied. She was fatigued but had no headaches. (Exhibit No. 11F at 48.) Continued improvement was noted in March 2012. (Exhibit No. 11F at 44.) In May 2012, Dr. Fitzgerald described the claimant as more symptomatic. He was going to try to get her back on Remicade. If she still was tearful and stressed in a month, an antidepressant should be prescribed. The possibility of surgery again was discussed. (Exhibit No. 11F at 23.)

(R. 28).

On the May 24, 2012 visit, just a month before the date the ALJ determined that Plaintiff ceased her disability, Dr. Fitzgerald noted Plaintiff's weight and appetite were "fair at best" and Plaintiff was having five bowel movements a day, with some bleeding (R. 452). In June 2012, Dr. Fitzgerald noted the claimant was taking Remicade treatments, high-dose Asacol, and low-dose prednisone, and was doing well with less pain and less bleeding (R. 448). By September 2012, the ulcerative colitis was described as being under good control (R. 371).

The ALJ acknowledged Dr. Fitzgerald's formal opinions:

> In October 2012, Dr. Fitzgerald completed a medical source statement listing a diagnosis of ulcerative colitis. The claimant experienced diarrhea and bloody stools, and she could have abdominal pain at any or all times. Her treatment had included Remicade infusions. The severity of the claimant's limitations was not affected by emotional factors. Dr. Fitzgerald estimated the claimant could: walk one block; sit for 30 minutes at a time for a total of less than two hours during an eight-hour workday; and stand/walk for 30 minutes at a time for a total of less than two hours during an eight-hour workday. She needed ready access to a restroom, with about eight to ten unscheduled restroom breaks of unspecified duration per workday. She sometimes would need to lie down at unpredictable intervals during a workday. She could lift ten pounds occasionally. She never could climb ladders, but she occasionally could twist, bend, crouch, or climb stairs. The claimant was capable of performing low stress work. She likely would be off task at least 25% of the time, and she likely would miss at least four days of work per month. (Exhibit No. 12F.)

(R. 28).

Plaintiff also saw Dr. Fitzgerald's colleague, gastroenterologist Scott Z. Seminer, M.D. (Doc. 28). Dr. Seminer saw Plaintiff in August 2013, noting that he had followed her for years for her ulcerative colitis, but had not seen her in about three or four years (R. 446). On this visit, it was noted that Plaintiff was doing "well at this time" on Remicade and Asacol (R. 447). By separate letter, Dr. Seminer confirmed that he had treated Plaintiff for at least 10 years and Plaintiff "has had multiple difficulties over that period of time, but over the last few years, she has been stabilized with the use of Remicade 500 mg IV every two months and Asacol 800 mg three times daily." (R. 445). It was noted that Plaintiff would require lifetime treatment and observation to maintain her in her present state and Dr. Seminer opined that Plaintiff "is clearly disabled from this disease." *Id.*

In November 2013, Dr. Seminer provided an opinion similar to Dr. Fitzgerald's but he did not estimate how long Plaintiff could sit, stand or walk during a workday (R. 29, 478-80). Dr. Seminer opined that Plaintiff would need five to six unscheduled restroom breaks of 30 to 60 minutes and ready access to a restroom with the need to lie down for 30 to 60 minutes at unpredictable intervals (R. 29, 478-480). He felt Plaintiff was incapable of low stress work and would miss at least four days per month and be off task at least 25 percent of the time (R. 29, 481).

The ALJ reviewed the opinions of the treating gastroenterologists and noted:

-8-

> Here, limited weight is given to the October 2012 medical source statement of Dr. Fitzgerald (Exhibit No. 12F), and the August 2013 medical source statement of Dr. Seminer. (Exhibit No. 21F.) A careful review of the medical record shows the physicians' assessments are inconsistent with their own contemporaneous statements regarding the claimant's significantly improved condition of ulcerative colitis.

(R. 31).

Plaintiff objects to the discounting of her providers' opinions as being unsupported by good cause and thus not supported by substantial evidence. Plaintiff also contends that the evaluation of these opinions was not in accordance with proper legal standards in that the ALJ did not address "all parts" of her doctors' opinions. While the Court does not hold that an ALJ must always explicitly reference all aspects of an opinion, the Court agrees that the ALJ's findings with respect to these opinions are insufficient here.

The articulated basis for discounting the opinions of the treating gastroenterologists is the ALJ's determination that Plaintiff's condition had significantly improved. As noted earlier in the decision:

> The objective medical evidence of record clearly shows the claimant has the serious physical impairment of ulcerative colitis. However, treatment of the condition has improved over time, to the point that *with few exceptions*, including when she was pregnant and unable to take certain medications, the claimant's medical treatment records since early 2012 repeatedly have described the condition as controlled.

(R. 31 emphasis added).

According to the rationale put forth by the ALJ as the *sole* reason for discounting the entirety of the specialists' opinions, the finding of significant improvement while on medications is "inconsistent" with an opinion that the Plaintiff is nonetheless significantly limited by her disease. The Court sees no such inconsistency. While the medical records do support improvement, the very existence of the "exceptions" acknowledged by the ALJ belies a finding that the disease is "controlled" to the extent that the ALJ need not address the specific limitations set forth by the treating specialists. The Court finds the rationale offered here to be too perfunctory for appropriate review.

-9-

It is undisputed that prior to her improvement Plaintiff was disabled by her condition. Even after her condition improved, none of her physicians noted Plaintiff to be cured or even in sustained remission. The uncontroverted evidence, as her specialist noted, is that this impairment is lifelong, fraught with "difficulties," and must be actively managed. As observed by her doctors and as Plaintiff testified to at her hearing,[1] the nature of her impairment is such that she does not know and cannot predict when a disabling flare up will occur. Indeed, Plaintiff had such a flare up just *one month* prior to the date the ALJ determined she was no longer disabled, and testified to several others (R. 48-9, 55, 58-60). Despite unanimous acknowledgment of the unpredictability of this disease and the need for frequent and unscheduled restroom breaks during a flare up, the RFC formulated by the ALJ does not include any accommodation for this. Moreover, the medical records show that during such flare ups, Plaintiff loses weight, becomes anemic and experiences debilitating fatigue. Indeed, despite unanimous findings of fatigability by *all* of Plaintiff's long time treating physicians, the ALJ does not address that limitation at all, and makes no accommodation for it in the RFC. The sparse rationale provided by the ALJ here is not sufficient to support a wholesale rejection of any and all of the limitations placed by treating doctors. Under the circumstances here, the ALJ's failure to address the specific limitations by long time treating specialists warrants remand. *See, e.g., Zobel v. Colvin*, No. 1:14-CV-45-MP-GRJ, 2015 WL 5468455, at *10 (N.D. Fla. Aug. 3, 2015), report and recommendation adopted, No. 1:14-CV-00045-MP-GRJ, 2015 WL 5470197 (N.D. Fla. Sept. 17, 2015) ("The ALJ also does not adequately explain why Dr. Sninsky's functional assessment regarding Plaintiff's need for bathroom breaks – which is uncontradicted by either Dr. Axline or Dr. Zelaya-should be rejected. Remand is necessary so that the ALJ can properly account for the relevant factors and adequately explain the basis for evaluating the treating physician's functional assessment.").

---

[1] Notably, the ALJ found Plaintiff's allegations to be "partially credible" (R. 32).

To be clear, the Court is not finding that anything short of a cure means that this condition is always disabling. Nor is the Court finding that the opinions are necessarily entitled to great or, indeed, any weight. It is for the ALJ to make and support that finding in the first instance. The Court holds only that *this* finding is not sufficient under the appropriate legal standard. On remand, the ALJ should make more particularized findings explaining the basis for the weight to be given the treating provider's opinions regarding limitations and accounting for the relevant factors.

## Conclusion

The Court finds that the decision of the Commissioner is not supported by substantial evidence and was not made in accordance with proper legal standards. As such, the decision is **REVERSED** and the matter **REMANDED** to the Commissioner, under sentence four of 42 U.S.C. §405(g), with instructions to properly address the treatment records and the opinions of Plaintiff's providers and reassess Plaintiff's residual functional capacity, based on all of the evidence of record; then, if need be, conduct such further proceedings as are necessary to issue a new decision based on substantial evidence and proper legal standards. The Clerk is directed to enter judgment for the Plaintiff accordingly, terminate all matters and close the file.

**DONE** and **ORDERED** in Orlando, Florida on August 18, 2016.

*David A. Baker*
DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record